# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

KIMBERLY HARRIS and ANGELIA STEELMAN,

    Plaintiffs,

v.                                                                         No. 2:19-cv-564 KWR/CG

THE GOVERNING BOARD OF
ARTESIA GENERAL HOSPITAL,
RICHARD GIBSON, in his individual capacity,
JOE PEREZ SALGADO, in his individual capacity
JORGE ABALOS, in his individual capacity
MARSHALL BACA, in his individual capacity
CORY YATES, in her individual capacity,

    Defendants.

## MEMORANDUM OPINION AND ORDER
## GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS

THIS MATTER comes before the Court on Defendants' Motion for Partial Dismissal of Plaintiffs' First Amended Complaint, filed December 5, 2019 **(Doc. 27).** Having reviewed the parties' pleadings and the relevant law, the Court determines that Defendants' motion is well-taken in part and therefore is **GRANTED IN PART** and **DENIED IN PART.** Plaintiffs' § 1983 claims (Counts XX, XXIII, and XXIV) are dismissed with leave to amend.

## BACKGROUND

This case arises from the alleged involuntary resignation and wrongful termination of two hospital employees. Plaintiffs Kimberly Harris (Harris) and Angelia Steelman (Steelman) (collectively "Plaintiffs") were employed by the Artesia General Hospital.[1] All individually named

---

1 The Complaint lists the Artesia Special Hospital District (ASHD) and the Governing Board of Artesia General Hospital as the entities which hired Plaintiffs. Plaintiffs have since stipulated to dismissal of ASHD and individually

Defendants are employees of the hospital in various capacities.

### A. Plaintiff Harris

Harris was hired by the hospital in 2014 as an Administrative Assistant, and eventually became the Human Resources Director. As Human Resources Director, Harris' tasks included conducting workplace investigations and ensuring compliance with hospital policies. During her tenure, Harris became aware of potential misconduct by some of the hospital's physicians against other hospital personnel. The alleged misconduct included addressing employees in a vulgar, confrontational fashion, employing intimidation, false accusations, and exclusionary tactics against employees[2]. When Harris undertook an investigation, she was "stifled and blocked" by the physicians she was investigating, including Dr. Jorge Abalos (Abalos) and Dr. Perez Salgado (Salgado), who purportedly solicited other physicians in support of their behavior.

In January 2018, Abalos engaged in misconduct violating the legal and professional standards of conduct of the hospital. He admitted to the misconduct but faced only minor disciplinary measures[3]. Throughout the year, Harris became increasingly involved in investigation of disciplinary matters that exacerbated the toxic environment in the hospital, particularly in relation to interactions with physicians and other healthcare professionals, which was divided along physician and administrative personnel lines.

From March-May 2018, a nurse, Irma Salmon (Salmon), allegedly a "physician's favorite" was subject to several disciplinary measures imposed by Harris. Ultimately, in a meeting with

---

named board members Dennis Maupin and Mike Deans. The stipulation also includes that plaintiffs were "solely employees of Artesia General Hospital." [Doc. 25].

2 The Complaint claims this behavior was directed "principally, if not exclusively, against female employees." Complaint ¶ 21.

3 Plaintiffs allege the minimal punishment emboldened Abalos to continue to behave inappropriately and "with impunity." Complaint ¶ 24.

other hospital employees Harris recommended termination of Salmon's employment. During the meeting, Salgado belligerently opposed her, directing profanities at her and telling her he "did not want to hear Harris' HR shit."[4]

By the beginning of May 2018, a group of physicians banded together with the goal of having upper level management, including Harris, disciplined and discharged. The Governing Board met with these physicians and upper-level management to discuss the ongoing issues within the hospital. Following the meeting, the Governing Board eliminated the position of various employees. Harris was informed by one such terminated employee that her position was targeted for elimination. The next day, Harris found a proposed severance letter on her desk. When she confronted the interim CEO, Defendant Richard Gibson (Gibson), he refused to address the matter.

On May 25, 2018, Harris wrote to Gibson and members of the Governing Board, expressing that she was, and had been, subject to harassment, retaliation, and a hostile work environment for some time. On May 30, 2018, allegedly to avoid an involuntary termination on her record, Harris informed the Governing Board that she was involuntarily resigning as Human Resources Director. In her resignation letter, she noted she was resigning involuntarily due to ongoing misconduct against her.[5]

### B. Plaintiff Steelman

In 2016, Steelman was hired as an Administrative Assistant, and later became the Administrative Contract Coordinator at the hospital. Although this was her official position, Steelman also carried out other, additional duties. Steelman suffers from a condition known as

---

[4] Plaintiffs state this was but one example of a series of threatening and intimidating behavior Harris faced in the final 12 months of her employment.
[5] The Complaint alleges she was subsequently replaced by a lesser-qualified male. Complaint ¶ 42.

Familial Hemiplegic Migraines, which cause her to experience severe migraines. The migraines are stress-induced and qualify as a disability within the meaning of a physical or mental impairment under the Americans with Disabilities Act Amendments Act (ADAAA).

On June 29, 2017, Steelman provided the hospital with a neurologist's medical documentation confirming the nature of her disability. Steelman was then provided with a series of accommodations including: relocation to an office in a quieter part of the HR department; modified work duties to remove high-traffic assignment; permission to go home if she felt an oncoming episode or experienced a migraine; modified scheduling to allow her to make up for time lost. These accommodations remained in place and were never withdrawn by the hospital. Although Steelman qualified as disabled pursuant to the ADAAA, the hospital never provided her with notices of eligibility under the Family and Medical Leave Act (FMLA). Her accommodation remained in place for approximately one year prior to the events subject to this action.

When Gibson became CEO in May 2018, Harris notified him of Steelman's condition and the medical note in her file. On May 31, 2018, Gibson spoke with Steelman and requested she take over some of the administrative workload in the wake of Harris' resignation. Steelman agreed to "help out" but informed Gibson she could not take on the entirety of the workload due to her condition. Nevertheless, shortly after the meeting Gibson circulated an email informing staff that Steelman would now assist the newly hired Human Resources Director. Steelman was dismayed by the email as it had not been her understanding that she would be assigned to assist the new Director, and she had indicated to Gibson that her condition limited her ability to take on new work. Over the next few weeks, Steelman engaged in additional work, and continued to suffer severe migraines. On or about June 5, 2018, Steelman e-mailed Gibson to advise him of the

4

accommodations she had been granted, to which Gibson did not respond.[6]

On June 8 and 11, 2018, Steelman took vacation time. On June 12, the day she returned to work, she realized she could no longer access the internal hospital system to perform her duties. Shortly thereafter she was notified that her presence was required in Gibson's office. When she arrived at Gibson's office, his executive assistant Stacy Wallace, and the interim CFO, Defendant Cory Yates (Yates) were both present. Gibson informed Steelman that she was being fired for insubordination. When Steelman responded inquiring as to why Gibson had not responded to her prior emails where she notified him she could not take on additional duties because of her disability, he responded angrily, telling her that it was not his responsibility to know the content of her medical file, but rather Steelman's responsibility to do what he told her. Gibson then instructed Wallace and Yates to escort Steelman to her office and then off the property. At no time did the hospital or its employees provide Steelman with required notice of eligibility under the FMLA.

Finally, the Complaint states that the hospital had a series of personnel and policy procedures which employees were required to abide by[7].

### C. Claims Asserted

Plaintiffs assert the following 26 claims:

Count I: Violations of Title VII / Gender Discrimination / Disparate Treatment
Count II: Violations of Title VII / Gender Discrimination / Hostile Work Environment
Count III: Violations of Title VII / Retaliation
Count IV: Violations of New Mexico Human Rights Act / Gender Discrimination /
    Disparate Treatment

---

6 The Complaint later states that Steelman informed Gibson on June 5 that she could not report to work because of her disability. *Complaint* ¶ 148.
7 It is unclear exactly what the alleged policies were, but the Complaint claims that employees expected AGH to adhere to those policies.

5

Count V: Violations of New Mexico Human Rights Act / Gender Discrimination / Hostile Work Environment
Count VI: Violations of New Mexico Human Rights Act / Retaliation
Count VII: Violations of the Americans with Disabilities Act / Failure to Accommodate
Count VIII: Violations of the Americans with Disabilities Act / Retaliation
Count IX: Violations of the Americans with Disabilities Act / Wrongful Termination
Count X: Violations of New Mexico Human Rights Act / Disability Discrimination
Count XI: Violations of New Mexico Human Rights Act / Failure to Accommodate
Count XII: Violations of New Mexico Human Rights Act / Retaliation because of Disability
Count XIII: Violations of the Family and Medical Leave Act / Interference
Count XIV: Violations of the Family and Medical Leave Act / Retaliation
Count XV: Violations of Title VII / Constructive Discharge
Count XVI: Violations of New Mexico Human Rights Act / Constructive Discharge
Count XVII: Breach of an Implied Contract of Employment
Count XVIII: Breach of the Covenant of Good Faith and Fair Dealing
Count XIX: Civil Conspiracy
Count XX: 42 U.S.C. § 1983: Fourteenth Amendment / Procedural Due Process
Count XXI: 42 U.S.C. § 1983: First Amendment / Retaliation
Count XXII: 42 U.S.C. § 1983: Fourteenth Amendment / Equal Protection
Count XXIII: 42 U.S.C. § 1983: Fourteenth Amendment / Substantive Due Process
Count XXIV: 42 U.S.C. § 1983: Fourteenth Amendment / Conspiracy
Count XXV: New Mexico Constitution Art. II, § 18 Violation of Substantive Due Process
Count XXVI: Violations of New Mexico Whistleblower Protection Act

Defendants filed a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) and qualified immunity, seeking dismissal of Counts XIX (Civil Conspiracy); XX, XXI, XXII, XXIII, XXIV (all § 1983); Count XXV (New Mexico Constitution Violations); and Counts XIII and XIV (Violations of Family and Medical Leave Act).

## LEGAL STANDARD

In reviewing a Fed. R. Civ. P. 12(b)(6) motion to dismiss, "a court must accept as true all well-pleaded facts, as distinguished from conclusory allegations, and those facts must be viewed in the light most favorable to the non-moving party." *Moss v. Kopp*, 559 F.3d 1155, 1159 (10th Cir. 2010). "To withstand a motion to dismiss, a complaint must contain enough allegations of fact 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678

(quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. In ruling on a motion to dismiss, "a court should disregard all conclusory statements of law and consider whether the remaining specific factual allegations, if assumed to be true, plausibly suggest the defendant is liable." *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011). Mere "labels and conclusions" or "formulaic recitation[s] of the elements of a cause of action" will not suffice. *Twombly*, 550 U.S. at 555.

Defendants have asserted the defense of qualified immunity, which shields government officials from liability for civil damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009); *Romero v. Story*, 672 F.3d 880 (10th Cir. 2012). When a defendant moves for dismissal on the basis of qualified immunity, the plaintiff bears a heavy two-fold burden. *Medina v. Cram*, 252 F.3d 1124, 1128 (10th Cir. 2001). The plaintiff must put forward evidence showing (1) that the defendant violated plaintiff's constitutional rights, and (2) the right at issue was clearly established at the time of the violation. *Id*. If the plaintiff fails to establish either part of the two-part inquiry, the Court must grant the defendant qualified immunity. *Id.*

## DISCUSSION

**I.     Counts XX – XXIV: Involvement of Individual Defendants under § 1983**

**A.     Counts XXI and XXII are Dismissed with Prejudice**

Initially, Plaintiffs have agreed in their response to dismiss Count XXI (First Amendment

Retaliation) and Count XXII (Fourteenth Amendment Equal Protection). Therefore, Counts XXI and XXII are **DISMISSED WITH PREJUDICE.**

  **B.** **Counts XX, XXIII, and XXIV are Dismissed as to the Individual Defendants with Leave to Amend.**

Defendants argue that the remaining § 1983 claims (Counts XX, XXIII, and XXIV) should be dismissed as to the individual Defendants, because they do not specify the unconstitutional acts of the individual Defendants that support each claim. The Court agrees.

Plaintiffs must allege some personal involvement by an identified official in the alleged constitutional violation to succeed under § 1983. *Fogarty v. Gallegos,* 523 F.3d 1147, 1162 (10th Cir. 2008); *Pahls v. Thomas*, 718 F.3d 1210, 1231–32 (10th Cir. 2013). In a § 1983 action, it is particularly important that a plaintiff's complaint "make clear exactly *who* is alleged to have done *what to whom*, to provide each individual with fair notice as to the basis of the claim against him or her." *Robbins v. Oklahoma,* 519 F.3d 1242, 1249-50 (10th Cir. 2008) (emphasis in original). Therefore, rather than grouping the actions of the Defendants together, Plaintiffs must establish that *each* defendant caused the alleged constitutional violation as to each Plaintiff. *Pahls v. Thomas*, 718 F.3d 1210, 1231–32 (10th Cir. 2013). This is especially important where, as here, there are two Plaintiffs, five remaining individual Defendants, and multiple § 1983 claims.

Plaintiffs originally filed a complaint against seven individual Defendants alleging violations of five different § 1983 constitutional claims. Plaintiffs referenced the particular acts of some individual Defendants in their factual allegations section. However, Plaintiffs did not clearly identify which actions by which defendants support each claim. Thus, neither the Court nor the Defendants are able to accurately tell what actions of the individual Defendants form the basis of

each claim. Partly because of these deficiencies, Defendants filed a motion to dismiss under Fed. R. Civ. P. 12(b)(6) for failure to state a claim, which argues that Plaintiffs failed to allege facts supporting certain claims.

"[T]he burden rests on the plaintiffs to provide fair notice of the grounds for the claims made against each of the defendants." *Robbins v. Oklahoma*, 519 F.3d 1242, 1250 (10th Cir. 2008) (dismissing case for failure to state a claim without prejudice to refiling). Because Plaintiffs failed to specify which claims each defendant is alleged to have committed, "it is impossible for any of these individuals to ascertain what particular unconstitutional acts they are alleged to have committed." *Robbins*, 519 F.3d at 1250 (dismissing case for failure to state a claim without prejudice to refiling). The Court is unconvinced by Plaintiffs' arguments in their response and finds that Plaintiffs did not satisfactorily clarify the confusion.

Therefore, **Counts XX, XXIII** and **XXIV** are **DISMISSED** as to the individual Defendants with leave to amend.

### C. Leave to Amend

Because the factual insufficiencies in the complaint can be resolved, the Court will allow Plaintiffs to file an amended complaint. *See, e.g., Amaro v. New Mexico*, 737 Fed. Appx. 882, 888 (10th Cir. 2018) (district court should have granted leave to amend where complaint could be amended to include required specificity). Plaintiffs are ordered to file an Amended Complaint in accordance with the following:

- Plaintiffs may file the Amended Complaint within thirty (30) days of the filing of this Order; and
- Each claim asserted by Plaintiffs shall identify which Defendants they assert that

9

claim against[8] ; and

- Plaintiffs shall specify which facts support inclusion of a particular Defendant under that claim or count. This may be satisfied by referring back to the specific factual paragraph on a particular Defendant.

   **D.    Qualified Immunity.**

Defendants seek dismissal of the § 1983 claims on the basis of qualified immunity. However, the Court cannot conduct the requisite analysis because it is unclear which actions, attributable to which Defendants, are alleged to have violated which constitutional right.

**II.    Remaining Claims Subject to Defendants' Motion to Dismiss**

   **A.**    Plaintiffs have additionally agreed in their response to dismiss Count XIX for Civil Conspiracy. Therefore, Count XIX is **DISMISSED WITH PREJUDICE**.

   **B.    Counts XIII and XIV: Violations of the FMLA**

Defendants seek dismissal of Counts XIII and XIV, which assert violations of the FMLA for interference and retaliation respectively, on the basis of failure to state a claim.

   **1.    Count XIII: Interference**

Plaintiffs claim Defendants violated the FMLA in that despite Steelman's submission of medical documentation related to her disability, which evinced qualification for FMLA leave, Defendants failed to provide Steelman with notice of eligibility in accordance with FMLA requirements. Plaintiffs assert that Defendants' decision to terminate Steelman's employment "on the heels of her requesting FMLA-eligible leave constitutes an adverse action" which interfered

---

[8] Some of Plaintiffs' Counts do indicate against which defendants the claims are asserted but nevertheless fall short of the requisite pleading standard of specifying which facts support inclusion of a particular Defendant under that claim.

with her right to take such leave; that the decision to terminate her employment "because of the exercise or attempted exercise of her FMLA rights was unlawful;" and that had she been notified of her rights to leave under the FMLA, she would have taken such leave to protect herself from her summary dismissal by Gibson and the hospital. *Complaint* ¶¶ 192-94[9].

Defendants argue that the allegations within the Amended Complaint do not state that Steelman requested leave which was denied or that accommodations were withheld.

To establish an FMLA interference claim, "an employee must show that (1) he was entitled to FMLA leave, (2) an adverse action by his employer interfered with his right to take FMLA leave, and (3) this adverse action was related to the exercise or attempted exercise of the employee's FMLA rights." "A deprivation of these rights is a violation regardless of the employer's intent, and the *McDonnell Douglas* burden shifting analysis does not apply" (internal citations omitted). *DePaula v. Easter Seals El Mirador*, 859 F.3d 957, 978 (10th Cir. 2017). "An employer can defend against the claim, however, by showing that the employee would have been terminated anyway, i.e. regardless of the request for FMLA leave." *Brown v. ScriptPro, LLC*, 700 F.3d 1222, 1227 (10th Cir. 2012).

In *Cordova v. New Mexico* (283 F. Supp. 3d 1028, 1041 (D.N.M. 2017)), the Court posited that "An employee need not expressly assert rights under the FMLA. 29 C.F.R. § 825.303…"When an employee requests FMLA leave, or when the employer acquires knowledge that an employee's leave may be for an FMLA–qualifying reason, the *employer must notify the employee* of the employee's eligibility to take FMLA leave within five business days. 29 C.F.R. § 825.303"

---

9 The Court notes that the FMLA claims apply solely to Steelman as there is no allegation that Plaintiff Harris falls within the ambit of the FMLA issues.

(emphasis in original). "To satisfy the second element of an interference claim, the employee must show that she was prevented from taking the full 12 weeks' of leave guaranteed by the FMLA, denied reinstatement following leave, or denied initial permission to take leave." *Campbell v. Gambro Healthcare, Inc.*, 478 F.3d 1282, 1287 (10th Cir. 2007)

Steelman's neurologist's letter confirming her medical condition and disability established her entitlement to take FMLA leave. *Cordova v. New Mexico*, 283 F. Supp. 3d at 1041. Despite her eligibility, the hospital never informed Steelman of her rights pursuant to the FMLA. Plaintiffs have alleged that Gibson was aware of Steelman's condition, having been notified initially by Harris that a medical note was in Steelman's file which supported her need for accommodations, and later by Steelman herself on more than one occasion. When Gibson requested Steelman take on additional assignments in the wake of Harris' resignation, she informed him she would be willing to "help out" but explained that her condition meant that she could only take on a limited role, which she subsequently reminded him of following his email to hospital personnel. The Court holds this to be sufficient notice. *See Tate v. Farmland Indus., Inc.*, 268 F.3d 989, 997 (10th Cir. 2001) (The FMLA, however, does not require a covered employee to specifically ask for FMLA benefits. An employee need not expressly assert rights under the FMLA or even mention the FMLA.)

Defendants contend that because Steelman was fired for insubordination, she would have been terminated despite qualifying for FMLA leave. The caselaw Defendants rely upon, however, were in the context of summary judgment, with factual backgrounds sufficiently distinct from the matter at hand. *See Branham v. Delta Airlines*, 678 Fed. Appx. 702, 705 (10th Cir. 2017) ("Ms. Branham proffered no evidence that Delta terminated her for any other reason than her failure to

comply with its absence-notification policy. Ms. Branham's request for FMLA leave, which she made after being suspended, did not shield her from the obligation to comply with Delta's employment policies, including its absence-notification policy."); *Gunnell v. Utah Valley State Coll.*, 152 F.3d 1253, 1262 (10th Cir. 1998) ([Gunnel] specifically refuses to argue that she was fired because of her FMLA request. In light of this concession, any reason for terminating Gunnell's employment would not involve FMLA, and consequently that statute can offer Gunnell no relief").

Here, the Complaint states that Defendants terminated Steelman's employment the day she returned from leave. *Complaint* ¶ 66. Plaintiff contests that she was ever insubordinate (*Id.* ¶ 68); claims she informed Gibson on June 5, 2018, that she could not report to work due to her disability; and alleges that false, contrived statements were made by others that Steelman refused to perform duties and had been argumentative with supervisors for the purpose of terminating her employment. *Id.* ¶ 84-88. Viewing the facts in the light most favorable to Plaintiffs, the Court concludes that at this early stage of the litigation process Plaintiffs' pleadings warrant denial of the motion to dismiss this count.

Finally, the Court notes that in their response to the motion to dismiss Plaintiffs appear to add Yates to the claim for interference under the FMLA. However, this assertion does not appear in Plaintiffs' Complaint[10], and to the extent that Plaintiffs may now be seeking to add Yates to the FMLA count, the claim is **DISMISSED**.

### 2. Count XIV: Retaliation

---

10 See Doc. 33 p. 13 "it is undoubted under the facts plead that Gibson, Yates and AGH interfered with Steelman's FMLA right to reinstatement. . . ." In the Complaint, Count XIII solely asserts claims against AGH, ASHD, and Gibson.

Defendants argue that Steelman has failed to demonstrate a *prima facie* case of retaliation under the FMLA, particularly because "she did not explicitly request FMLA leave." Doc. 27 p.26.

The requisite elements of an FMLA retaliation claim are as follows:

> Unlike claims under an interference theory, FMLA claims under a theory of retaliation *are* subject to the burden-shifting analysis of *McDonnell Douglas. Metzler,* 464 F.3d at 1170 (citing *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802–04, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)). A prima facie case of retaliation requires a showing that (1) the employee engaged in a protected activity, (2) the employer took an action that a reasonable employee would have found materially adverse, and (3) there is a causal connection between the protected activity and the adverse action. *Id.* at 1171. Once a plaintiff establishes the prima facie case, the burden shifts to the employer to demonstrate a legitimate, nonretaliatory reason for termination. *Id.* at 1172.

*Brown v. ScriptPro, LLC* (700 F.3d 1222, 1229 (10th Cir. 2012)); *See also Dewitt v. Sw. Bell Tel. Co.*, 845 F.3d 1299, 1318–19 (10th Cir. 2017).

In support of their argument, Defendants aver that Steelman did not request FMLA paperwork; apply for FMLA leave; give AGH notice of her intent to use leave; or articulate an intent to use FMLA leave. As expressed in the foregoing FMLA interference analysis, the record indicates that Steelman qualified for FMLA-leave due to her condition, which both the hospital and Gibson were aware of and had on file; explained to Gibson the limiting nature of her disability when he asked her to take on additional work; notified him she could not report to work on June 5, 2018 due to her disability; took days off on June 8 and 11; and was fired on her first day back from the alleged FMLA-qualifying time off. Viewing the facts in the light most favorable to Steelman, the first two elements for retaliation have been established.

In *Metzler v. Fed. Home Loan Bank of Topeka* (464 F.3d 1164, 1171 (10th Cir. 2006)), an action in which plaintiff was terminated and brought FMLA interference and retaliation claims against her employer, the Court discussed the requisite showing for the third element of retaliation:

14

> The "critical inquiry" at this prima facie stage is "whether the plaintiff has demonstrated that the [employer's] action occurred under circumstances which give rise to an inference of unlawful discrimination." *Garrett v. Hewlett-Packard Co.,* 305 F.3d 1210, 1221 (10th Cir.2002) (quotations omitted). We have repeatedly recognized temporal proximity between protected conduct and termination as relevant evidence of a causal connection sufficient to "justify an inference of retaliatory motive." *See, e.g., Haynes,* 456 F.3d 1215, 1228. We have emphasized, however, that a plaintiff may rely on temporal proximity alone only if "the termination is *very closely* connected in time to the protected activity." *Anderson v. Coors Brewing,* 181 F.3d 1171, 1179 (10th Cir.1999) (emphasis in original).

Here, there is a very close, temporal proximal between Steelman's alleged FMLA-qualifying leave and the termination of her employment on her first day back at work. Additionally, the record plausibly provides circumstantial evidence of a pretextual reason for her termination, which "giv[e] rise to an inference of retaliatory animus." *Campbell v. Gambro Healthcare, Inc.*, 478 F.3d at 1290–91 (citing *Metzler v. Fed. Home Loan Bank of Topeka*, 464 F.3d at 1172-73) (To defeat summary judgment, plaintiff must "present evidence of temporal proximity *plus* circumstantial evidence of retaliatory motive.") Therefore, the Court denies Defendants' motion with respect to FMLA retaliation.

### C. <u>Count XXV: Violation of New Mexico Constitution is Dismissed with Prejudice</u>

Plaintiffs claim Defendants violated their substantive due process rights based on Article II, § 18 of the New Mexico Constitution. Defendants argue that Count XXV should be dismissed because, "In the absence of affirmative legislation, the courts of this state have consistently declined to permit individuals to bring private lawsuits to enforce rights guaranteed by the New Mexico Constitution, based on the absence of an express waiver of immunity under the Tort Claims Act. *See Chavez,* 1998–NMCA–004, ¶ 11, 124 N.M. 479; *Ford v. N.M. Dep't of Pub. Safety,* 119 N.M. 405, 412, (Ct.App.1994). "*Barreras v. State of New Mexico Corr. Dept.*, 2003-NMCA-027,

¶ 24, 133 N.M. 313, 319.

Absent waiver under the New Mexico Tort Claims Act, a plaintiff may not sue a government entity for a damage claim. *See Bell v. Bd. of Educ. of the Albuquerque Pub. Sch.*, 2008 WL 2397670, at *7 (D.N.M. Jan. 30, 2008). Here, Defendants correctly note that no waiver has been established, and Plaintiffs have not sought relief in a form other than for damages. Moreover, Plaintiffs have not issued a response, or addressed Defendants arguments at all, with respect to this claim. Accordingly, Count XXV is **DISMISSED WITH PREJUDICE.**

## CONCLUSION

**IT IS THEREFORE ORDERED** that Defendants' Motion to Dismiss **(Doc. 27)** is **GRANTED IN PART** and **DENIED IN PART** for the reasons described in this Memorandum Opinion and Order; and

**IT IS FURTHER ORDERED that Counts XX, XXIII and XXIV** are **DISMISSED** as to the individual Defendants with leave to amend; and

**IT IS FURTHER ORDERED** that Plaintiffs may file an amended Complaint within thirty (30) days of the filing of this order. If Plaintiffs fail to do so, the Court may dismiss with prejudice **Counts XX, XXIII** and **XXIV** without further notice; and

**IT IS FINALLY ORDERED** that **Counts XIX, XXI, XXII**, and **XXV** are **DISMISSED WITH PREJUDICE.**

_____
KEA W. RIGGS
UNITED STATES DISTRICT JUDGE